# Hudson Coal Company *v.* Ogden, Appellant.

*Contract—Taxation—Special tax—Conveyance of coal.*

Where a corporation purchases coal property from another corporation under an agreement that it is to be free from any and all claims or liabilities whatsoever of or against the selling company "or said property at the date of such transfer," a special tax ordered by the court to pay a debt incurred by the township in which the property was situated, prior to the transfer, is a liability against the property which the selling corporation must pay under its .contract. The liability for the special tax is fixed by the decree of the court, and is effective from the date of the decree, although the collection of the tax was for a time suspended by an appeal to a higher court.

Argued April 12, 1905. Appeal, No. 372, Jan. T., 1904, by defendants, from judgment of C. P. Luzerne Co., May T., 1904, No. 805, for plaintiff on case stated in suit of the Hudson Coal Company v. Joseph W. Ogden, Gustav E. Kissel and Leslie S. Ryman, executor of W. P. Ryman, deceased. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Case stated to determine liability for a tax.

The opinion of the Supreme Court states the case.

*Error assigned* was judgment on case stated.

*S. J. Strauss*, for appellants.

*George R. Bedford*, with him *Paul Bedford* and *Andrew H. McClintock*, for appellee.

OPINION BY MR. JUSTICE POTTER, June 22, 1905 :

On April 18, 1902, the Hudson Coal Company purchased the property of the Algonquin Coal Company, under an agreement that it was to be "free from any and all claims or liabilities whatsoever of or against the said Algonquin Coal Company, or said property at the date of such transfer," etc. It appears that an indebtedness upon the part of the township in which the property was situated had been incurred, and was a liability against the township, prior to January 24, 1902. But on that day the court, by its decree, ordered a special tax, and directed that within twenty days the commissioners should prepare duplicates for a levy of eighteen mills upon the aggregate assessed valuation of the said township, to pay the indebtedness. The valuation of the property was afterwards reduced by the county commissioners, and it became necessary to increase the rate of the levy to produce the same amount by taxation. We agree with the court below that the liability of the taxable property in the township, for the payment of the indebtedness was fixed, by the decree of the court, on January 24, 1902. This was a special tax which could only be authorized by the court. For the ordinary and current expenses the township commissioners may levy taxes. But in this case the liability for the special tax was fixed by the decree of the court, and the duties of the township commissioners in collecting the tax were ministerial. They had no discretion in the matter, but were bound to carry out the order of the court. It is true that by the appeal to the higher courts the collection of the tax was for the time being suspended, but the assessment which had been made under the direction of the court was not suspended ; and when the appeal was determined

the final judgment had relation to the date of the original decree. The decree of 1903 was supplemental to that of 1902, and levied the same tax in its amount. We are not, however, so much concerned as to whether or not the decree of January 24, 1902, was technically the assessment of a tax; it is sufficient that its effect was to fix in terms the liability of the township, and of the property therein, for the payment of the indebtedness which had been created before that time. Under the terms of the agreement of sale the purchaser was to have the property for the price named, free and clear of all incumbrances, except those enumerated. And this liability for taxes, which was liquidated and fixed by the decree of January 24, 1902, was, we think, clearly a liability upon the property of the Algonquin Coal Company, at the date of the transfer, and as such was under the terms of the agreement, to be paid by it.

The assignments of error are overruled and the judgment is affirmed.